Opinion issued December 30, 2004







     



In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00633-CR




TED ROBERTSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 940376




O P I N I O N
          A jury found appellant, Ted Robertson, guilty of violating a protective order.


 
After finding two enhancements true, the jury assessed appellant’s punishment at 25
years’ confinement. In four points of error, appellant argues that the evidence is
legally and factually insufficient to support his conviction because the State did not
establish that he (1) threatened the complainant with imminent bodily injury and (2)
used or exhibited a deadly weapon. We affirm.
Background
          Appellant and the complainant had been married for 19 years when they
divorced in 1997. The marriage produced two sons. After the divorce, in 2001, the
complainant obtained a protective order against appellant. The protective order
forbade appellant from: (1) committing family violence against the complainant; (2)
threatening or harassing the complainant directly or through another person; (3) going
near or to the complainant’s home or office; and (4) engaging in conduct that would
be likely to harass, abuse, annoy, alarm, torment, or embarrass the complainant. The
protective order warned appellant that a violation could result in a fine, confinement
in jail, or both.
          The complainant testified that, in March 2002, Tracey Robertson, appellant’s
and the complainant’s youngest son, telephoned his father to tell him about an
argument he had with his basketball coach. Appellant went to the complainant’s
home, where Tracey was living. Appellant announced his arrival by yelling and
beating on the front door. The complainant opened her front door, but kept her
burglar bar door, which had fairly large gaps in between the bars, closed. Appellant,
who had a box-cutter knife in his hand, yelled obscenities and ordered the
complainant to come outside. The complainant was afraid and refused; she told him
to leave or she would call the police. Appellant told her that he would “get her” and
that he was coming back. Eventually, the complainant closed the front door and
appellant left. Tracey Robertson testified that he saw his parents argue, but did not
see a knife. 
          The complainant called the police after appellant left. The Houston police
officer who responded to her call testified that the complainant’s eyes were wet, and
that she seemed very nervous, upset, and afraid. He testified that she spoke with a
shaky voice when she told him what appellant had done. 
Standard of ReviewLegal Sufficiency
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational fact finder could
have found the essential elements of the crime beyond a reasonable doubt. Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000). Although our analysis considers all evidence presented
at trial, we may not re-weigh the evidence and substitute our judgment for that of the
fact finder. King, 29 S.W.3d at 562.
          Factual Sufficiency
          We begin the factual sufficiency review with the presumption that the evidence
supporting the jury’s verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light, and we
will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust, or the contrary evidence is so strong that the standard
of proof beyond a reasonable doubt could not have been met. Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004)). Our evaluation may not intrude upon the fact finder’s
role as the sole judge of the weight and credibility accorded any witness’s testimony. 
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). What weight to be given
contradictory testimonial evidence is within the sole province of the fact finder
because it turns on an evaluation of credibility and demeanor; the fact finder may
choose to believe all, some, or none of the testimony presented. Id. at 407–08. We
must defer appropriately to the fact finder to avoid substituting our judgment for its
judgment. Zuniga, 144 S.W.3d at 481–82.    
Discussion
Imminent Bodily Injury
          In his first and second points of error, appellant contends the State failed to
prove, as a matter of law or fact, that he threatened the complainant with imminent
bodily injury. 
          A protective order is violated if a person knowingly or intentionally commits
an act of family violence. Tex. Pen. Code Ann. § 25.07(a)(1). Family violence
means “an act by a member of a family . . . against another member of the family . .
. that is intended to result in . . . bodily injury, assault, or . . . that is a threat that
reasonably places a member in fear of imminent . . . bodily injury.” Tex. Pen. Code
Ann. § 71.004 (Vernon 2003). Appellant contends his threat was conditioned on a
future event; that is, the complainant would only be harmed if she came outside of her
house. He argues, therefore, that, under Devine v. State, 786 S.W.2d 268, 270 (Tex.
Crim. App. 1989), his actions did not constitute a threat of imminent bodily injury. 
We disagree.
          “Imminent” means “near at hand; mediate rather than immediate; close rather
than touching; impending; on the point of happening; threatening; menacing;
perilous.” Devine, 786 S.W.2d at 270 (citing Black’s Law Dictionary 676 (rev.
5th ed. 1979)). As in Devine, we construe the term “imminent” to refer to a present
threat, not a future threat of bodily injury or death. See Devine, 786 S.W.2d at 270
(defining “imminent” bodily injury with respect to § 29.02(a)(2) of the Texas Penal
Code). The Court of Criminal Appeals relied on this definition in Devine to find that
Devine did not threaten the complainant with imminent bodily injury when she said
that she would have him killed sometime in the future if he did not give her money. 
Id. The court explained that there was nothing in the record to show that Devine had
“acted in such a way as to place [the complainant] in fear of imminent harm” because
Devine did not tell Cox that she was carrying a weapon, nor did she make threatening
movements towards Cox. Id. at 271. 
          Citing Green v. State, 567 S.W.2d 211 (Tex. Crim. App. 1978), the Devine
Court distinguished between a conditional and a future threat. See Devine, 786
S.W.2d at 270–71. In Green, the defendant had told the complainant to give him
money or he would cave his head in. Green, 567 S.W.2d at 212. The Devine Court
held that Green’s threat was a conditional threat of imminent bodily injury, unlike
Devine’s threat of bodily injury to occur sometime in the future; proof of the
conditional threat, unlike proof of a future threat, satisfied the standard of proof of
imminent bodily injury. See Devine, 786 S.W.2d at 271. 
Legal Sufficiency
          Here, the evidence presented at trial showed that appellant went to the
complainant’s house and announced his presence by banging on the door and yelling. 
The complainant opened the door, but kept the burglar bars closed. Appellant took
a box-cutter knife out of his pocket and ordered the complainant to come outside. 
Appellant told her that he would “get her” and that he was coming back. The
complainant told him to leave or she would call the police. She testified that she was
afraid of appellant, even though the burglar bars were closed. She was afraid
appellant would return. She explained that appellant had, on several prior occasions,
told her he did not care about the protective order. 
          We conclude that appellant’s threat was not a future threat of bodily injury but
was a present threat of imminent bodily injury. Displaying the box-cutter knife was
an overt, threatening act. In addition, appellant stated that he would “get her” and
that he was coming back. While burglar bars separated appellant from the
complainant, it is possible that he could have injured her by striking her between the
bars or by waiting for her to leave her home. Appellant told the complainant that he
would return, and she believed him. 
          We conclude that this evidence was sufficient for the jury to conclude beyond
a reasonable doubt that appellant threatened the complainant with imminent bodily
injury. The evidence was thus legally sufficient.
Factual Sufficiency
          The only contradictory evidence presented was the testimony of Tracey
Robertson, the complainant’s and appellant’s son. Tracey testified that he saw his
parents argue, but he did not see appellant with a knife. He also testified that he did
not hear appellant threaten the complainant. On cross-examination, Tracey testified
that he did not want his father to go to prison. He stated he did not recall speaking
to a police officer after the encounter between his parents. He also did not remember
telling the police officer that his father kicked the front door; or that his father pulled
a knife out of his pocket and told his mother that he was going to get her; and he
testified that he did not see the knife.
          A jury has the sole province of deciding what weight to give contradictory
testimony because its decision turns on the evaluation of demeanor and credibility. 
Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). A jury’s verdict is
not manifestly unjust when it resolves conflicting views in favor of the State. Id. at
410. It is clear by the verdict that the jury chose to give more weight to the
complainant’s testimony. After examining all of the evidence neutrally, we hold that
the proof of guilt was not so obviously weak as to undermine confidence in the jury’s
determination; nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard could not have been met. The evidence was thus factually sufficient
to show that appellant threatened the complainant with imminent bodily injury.
          We overrule appellant’s first and second points of error.
          Deadly Weapon  
          In his third and fourth points of error, appellant contends the evidence was
legally and factually insufficient to support his conviction because the State did not
prove that the box-cutter knife


 was a deadly weapon as defined by law. The State
responds that proof that appellant threatened the complainant with imminent bodily
injury with a knife is enough to prove a violation of section 25.07 of the Texas Penal
Code, the crime with which appellant was charged, without proof that the knife was
a deadly weapon. Thus, any variance between the proof and the indictment—which
stated that appellant, “did there and then unlawfully intentionally and knowingly
violate a protective order . . .by committing the offense of assault of [the
complainant], with imminent bodily injury by threatening [her] with a deadly weapon,
namely, A KNIFE”—was immaterial.
          When there is a discrepancy between the evidence presented at trial and the
language in the charging instrument, a variance exists. Gollihar v. State, 46 S.W.3d
243, 246 (Tex. Crim. App. 2001). If an appellant’s due process rights are violated,
the variance is fatal and the evidence is insufficient. Id. at 257. However, if the
variance does not surprise the appellant or prejudice his substantial rights, the
variance is immaterial and does not impact his conviction. Id. at 248. An appellant’s
substantial rights are prejudiced if the charging instrument does not inform him
sufficiently to allow him to develop an adequate defense. Id. An appellant’s rights
are also substantially prejudiced if, under a differently worded charging instrument,
he could be prosecuted for the same offense at a later time. Id. at 248–49.
A variance between the wording of an indictment and the evidence
presented at trial is fatal only if “it is material and prejudices [the
defendant’s] substantial rights.” When reviewing such a variance, we
must determine whether the indictment, as written, informed the
defendant of the charge against him sufficiently to allow him to prepare
an adequate defense at trial, and whether prosecution under the
deficiently drafted indictment would subject the defendant to the risk of
being prosecuted for the same crime. . . . we hold that when faced with
a sufficiency of the evidence claim based upon a variance between the
indictment and the proof, only a “material” variance will render the
evidence insufficient. Thus, the hypothetically correct charge will take
into consideration the fatal variance doctrine . . . . Allegation[s] giving
rise to immaterial variances may be disregarded in the hypothetically
correct charge, but allegations giving rise to material variances must be
included.
 Gollihar, 46 S.W.3d at 257 (footnotes omitted).      
          Appellant was charged with unlawfully, intentionally and knowingly violating
a protective order by “committing the offense of assault of [the complainant], namely,
by intentionally or knowingly threatening [the complainant] with imminent bodily
injury by threatening [the complainant] with a deadly weapon, namely, A KNIFE.” 
A person commits assault when he “intentionally or knowingly threatens another with
imminent bodily injury.” Tex. Pen. Code Ann. § 22.01(a)(2) (Vernon 2003). A
deadly weapon is not a statutory element for violating a protective order or
committing an assault. See id.; Tex. Pen. Code Ann. § 25.07(a)(1). As discussed
above, we have found the evidence is legally and factually sufficient to show that
appellant threatened the complainant with imminent bodily injury with a box-cutter
knife.
          We conclude that the indictment sufficiently informed appellant of the charge
against him to allow him to prepare an adequate defense and that he was not put at
risk of being prosecuted later for the same crime by the inclusion of the words “a
deadly weapon” in the indictment. Therefore, allegation of the words “a deadly
weapon” in the indictment, which words were omitted from the jury charge, did not
give rise to a material variance. Because it was unnecessary for the State to prove the
box-cutter knife was a deadly weapon, appellant’s claims of insufficient evidence are
without merit.
          We overrule appellant’s third and fourth points of error.
          We affirm.
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Publish. Tex. R. App. P. 47.2(b).